FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 01 2010 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
BENJAMIN BIER,

                                Petitioner,

        -against-

DAVID MILLER, Superintendent of Eastern
Correctional Facility,

                                Respondent.
----------------------------------------------------------------x

MEMORANDUM & ORDER

05-CV-4312 (ENV)

VITALIANO, D.J.

      Petitioner Benjamin Bier is before the Court on his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, Bier's petition for habeas corpus is dismissed and the writ is denied.

BACKGROUND

      On August 17, 1998, Eileen Marino was robbed after withdrawing money from an ATM. Marino was face-to-face with the robber, who threatened her with a screwdriver. Although it was nighttime, the area was well lit, and she was able to see the robber's face and profile; she also saw him without his cap, as it fell off as he dashed away. After the robbery, Marino went to a nearby car in which Marsha Knight, a retired police officer, was seated. Knight herself had been at the ATM minutes earlier, but had aborted her transaction and locked herself in her car after a man—the same one who subsequently robbed Marino—began walking towards her.

      The night of the robbery, Marino went to a police station and worked with an artist to create a composite sketch of the robber. She viewed photographic slides to identify features for the artist; one of the slides happened to be an old picture of Bier. Marino stated that the man in the picture looked like the robber. After the sketch had been completed, a detective recognized

1

the man sketched as Bier. On September 21, 1998, Marino was asked to go to the precinct to view a photo-array. She was told that the array may or may not contain a photo of her assailant; as it happened, the detective had added a new photograph of petitioner to the collection. Marino picked a photograph of petitioner out of the photo-array.

Bier was arrested on November 26, 1998 and initially charged, under Indictment Number 2726-98, with one count of robbery in the third degree. He was arraigned on December 7, 1998 but not held; subsequent plea negotiations failed.

On February 4, 1999, Marino viewed two police lineups and picked Bier both times as her assailant. Following the first of these lineups, the police told her that her assailant may or may not have been included in it. Subsequently, the case was again presented to the Grand Jury and petitioner was charged, under Indictment Number 928-99, with one count of robbery in the first degree, a class B felony. See N.Y. PENAL LAW § 160.50[3].

Bier moved to suppress any in-court identification of him by Marino because he believed that the out-of-court identifications were suggestive. A hearing was held on October 12, 1999 to determine whether Marino's identification of defendant was tainted. By written decision on January 4, 2000, the hearing court found that there was no evidence of taint and held that the identification testimony of Marino would not be suppressed. Following a jury trial, at which both Marino and Knight testified, defendant was convicted on April 3, 2000 of first-degree robbery. On January 9, 2001, he was sentenced to 15 years imprisonment as a prior violent felony offender.

Petitioner, represented by counsel, appealed to the Appellate Division, Second Department, on May 10, 2004, arguing that the pre-trial photographic identification procedures employed were impermissibly suggestive, thereby tainting the subsequent lineup; that his guilt

had not been proven beyond a reasonable doubt; and that the 15-year sentence imposed was harsh and excessive and should be modified in the interest of justice. Bier subsequently filed a pro se supplemental brief arguing that he had been deprived of his constitutional right to the effective assistance of trial counsel. The Appellate Division affirmed Bier's conviction on March 28, 2005, disagreeing with his "contention that the identification procedures, 'either individually or collectively, were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification,'" People v. Bier, 16 A.D.3d 698, 698, 794 N.Y.S.2d 61, 62 (2d Dep't 2005) (citations omitted), and adding that Bier's "remaining contentions, including those raised in his supplemental pro se brief, are without merit." 16 A.D.3d at 699, 794 N.Y.S.2d at 62.

Bier then filed for leave to appeal to the New York Court of Appeals, raising the four issues that he had presented in his briefs to the Appellate Division. Leave to appeal was denied on May 31, 2005. People v. Bier, 4 N.Y.3d 883; 798 N.Y.S.2d 729; 831 N.E.2d 974 (2005).

On September 2, 2005, Bier timely filed the instant pro se petition for a writ of habeas corpus. In support of his petition, Bier argues that he was deprived of his federal constitutional rights because (1) he was denied the effective assistance of trial counsel; (2) the identification procedures employed in his case were impermissibly suggestive; and (3) the prosecution "failed to prove, beyond a reasonable doubt, the charges that culminated after a jury verdict." (Pet. at 2-3.) The People filed their response on January 13, 2006. Bier subsequently moved for a stay of proceedings to allow him to exhaust his claim of ineffective assistance of counsel at the state court level. This Court granted his request by Order filed January 11, 2007. Bier's motion to vacate his judgment of conviction based on his ineffective assistance of counsel claim was subsequently denied, as was leave to appeal to the Appellate Division. Bier's petition, modified

by the inclusion of his claim of ineffective assistance of counsel, was reinstated by order filed January 4, 2008.

**STANDARD OF REVIEW**

Under AEDPA, a federal court is not free to issue a writ of habeas corpus under the independent "contrary to" clause of § 2254(d)(1) unless "the state court arrive[d] at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decide[d] a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., for the Court, Part II) (citation omitted). Similarly, a federal court cannot issue the writ under the independent "unreasonable application" clause unless "the state court identifie[d] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." Id. at 413. But, a state court's "unreasonable application" of law must have been more than "incorrect or erroneous": it must have been "'objectively unreasonable.'" Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001) (citing Williams, 529 U.S. at 409 (O'Connor, J., for the Court, Part II)). Lastly, claims that were not adjudicated on the merits in state court are not subject to the deferential standard[1] that applies under AEDPA. See, e.g., Cone v. Bell, 129 S. Ct. 1769, 1784 (2009) (citing 28 U.S.C. § 2254(d)).

**DISCUSSION**

The Court finds that Bier has now fairly presented the federal nature of his claims in state court, meaning that he has exhausted his state judicial remedies. See, e.g., Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003) ("The claim

---

[1] Under AEDPA's deferential standard of review, "[d]etermination of factual issues made by a state court 'shall be presumed to be correct,' and the applicant 'shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'" Smith v. Herbert, 275 F. Supp. 2d 361, 365-66 (E.D.N.Y. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

presented to the state court . . . must be the 'substantial equivalent' of the claim raised in the federal habeas petition." (citations omitted)); Daye v. Attorney Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982) (listing the "ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim"). Thus, this Court may review all three grounds of his habeas petition. See, e.g., O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Picard v. Connor, 404 U.S. 270, 275 (1971) ("It follows, of course, that once the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied." (citations omitted)); Morgan, 204 F.3d at 369. Moreover, because the state court adjudicated petitioner's claims on the merits, see People v. Bier, 16 A.D.3d 698, 794 N.Y.S.2d 61, the Court will analyze them applying AEDPA's deferential standard of review. See Cone, 129 S. Ct. at 1784.

A. Ineffective assistance of counsel

Bier claims that he was denied effective assistance of trial counsel because counsel failed to move to dismiss the superseding indictment despite an alleged violation of New York Criminal Procedure law § 190.75[3]. "[T]he proper standard [to renew such a claim directed at] attorney performance is that of reasonably effective assistance." Strickland v. Washington, 466 U.S. 668, 687 (1984). Consequently, a convicted defendant who claims ineffective assistance of counsel must show both that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) "the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In reviewing a claim of ineffective assistance of counsel even in the abstract, "[j]udicial scrutiny of counsel's performance must be highly deferential," as "[t]here are countless ways to provide effective assistance in any given case." Id. at 689.

The Court finds that the denial by the state courts of Bier's appeal with respect to his ineffective assistance of trial counsel claim was neither contrary to, nor an unreasonable application of, the holding in Strickland, or its Supreme Court progeny. "[F]ailure to raise a motion does not constitute ineffective assistance of counsel if the motion would likely have been unsuccessful." United States v. Gomez, 644 F. Supp. 2d 362, 370 (S.D.N.Y. 2009). Here, a motion to dismiss would certainly have been unsuccessful because, in light of the circumstances at issue, and under, e.g., People v. Simmons, 158 A.D.2d 727, 552 N.Y.S.2d 174 (2d Dep't 1990), "there would have been no basis upon which such motion should have been made." (Order dated June 19, 2007 denying petitioner's § 440 motion; see also N.Y. CRIM. P. LAW § 190.75[3]. The cases cited by petitioner are not to the contrary. See People v. Almonte, 190 Misc. 2d 783, 740 N.Y.S.2d 763 (Sup. Ct. 2002); People v. McCann, 169 Misc. 2d 253, 645 N.Y.S.2d 409 (Sup. Ct. 1996). As a result, the fact that Bier's trial counsel did not move to dismiss could not possibly have constituted ineffective assistance of counsel, rendering his argument on this point "without merit," Bier, 16 A.D.3d at 699, 794 N.Y.S.2d at 62, and the Appellate Division's rejection of it is fully in keeping with federal law. Simply stated, Bier has presented no evidence whatsoever that his trial counsel's conduct fell to a Strickland level of ineffectiveness. Thus, the state courts committed no constitutional error in rejecting petitioner's claim on this point.

B.  Identification procedures

In his arguments to the Appellate Division, Bier claimed that the pre-trial identification procedures were unduly suggestive due to the facts that (1) the sequential photographic and lineup procedures led Marino to identify him because she had seen his photograph multiple times and (2) the police erred when they told Marino, at both the viewing of the photo-array and the

lineup, that the person who robbed her may or may not have been included. Petitioner contended "that the identification procedures, 'either individually or collectively, were so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" Bier, 16 A.D.3d at 698, 794 N.Y.S.2d at 62. The Appellate Division disagreed, finding that Bier's "various identifications were so distant in time from one another that the possibility that the procedure employed by the police prejudiced the defendant was sufficiently mitigated," id. at 698-99, 62 (citation omitted) and stating, "we cannot conclude from the record before us that the detective's comment following the complainant's first lineup identification was an endorsement or confirmation of the complainant's selection." Id. at 699, 62.

As the Supreme Court has noted, "[i]t is the likelihood of misidentification which violates a defendant's right to due process," making an identification procedure that leads to a very substantial likelihood of misidentification the "primary evil to be avoided." Neil v. Biggers, 409 U.S. 188, 198 (1972) (citing Simmons v. United States, 390 U.S. 377, 384 (1968)). "Suggestive confrontations are disapproved because they increase the likelihood of misidentification, and unnecessarily suggestive ones are condemned for the further reason that the increased chance of misidentification is gratuitous." Id. Yet, even if an identification procedure was unnecessarily and impermissibly suggestive, the next step is not suppression; it is to determine whether, "under the 'totality of the circumstances[,]' the identification was reliable even though the confrontation procedure was suggestive." Id. at 199; see also Manson v. Brathwaite, 432 U.S. 98, 114 (1977) ("[R]eliability is the linchpin in determining the admissibility of identification testimony."); Abdur Raheem v. Kelly, 257 F.3d 122, 133 (2d. Cir. 2001) ("In sum, the identification evidence will be admissible if (a) the procedures were not suggestive or (b) the identification has independent reliability." (citations omitted)). Moreover, the Supreme Court has also taught that

the factors to be considered in determining reliability "include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Biggers, 409 U.S. at 199-200.

The Court finds that the decision by the Second Department to reject Bier's identification claim was not contrary to clearly established federal law as determined by the Supreme Court. Plainly, the Second Department did not arrive at a conclusion of law opposite to one reached by the Supreme Court, and it did not reach a result different from one reached by the Supreme Court on materially indistinguishable facts. Its determination that the identification procedures were not unduly suggestive, citing the distance in time between the identifications, is supported both by the evidence and by Supreme Court cases such as Manson and Biggers. Over the course of several months, Marino—who had had ample opportunity to observe Bier as he robbed her—consistently and unwaveringly identified Bier as her assailant. That Bier's photograph was in the initial photo-array was, perhaps, an unhappy coincidence, but there is absolutely no evidence that it was more than that. Additionally, the accuracy of Marino's initial description of her assailant to the sketch artist, along with Knight's unquestionably untainted identification of Bier at trial, would certainly have brought Bier to justice eventually, rendering any error—and the Court does not find that was any—harmless. See generally Hedgpeth v. Pulido, 129 S. Ct. 530 (2008) (citing, inter alia, Brecht v. Abrahamson, 507 U.S. 619 (1993)) (discussing harmless-error analysis); Arizona v. Fulminante, 499 U.S. 279 (1991) (citing, inter alia, Chapman v. California, 386 U.S. 18 (1967)) (discussing harmless-error analysis).

As for the police officer's comments, the Court agrees with the Appellate Division that,

8

at worst, each "comment was equivocal and merely an acknowledgment that she had completed that phase of the procedure." Bier, 16 A.D.3d at 699, 794 N.Y.S.2d at 62.

Accordingly, Bier is not entitled to relief on this ground, either.

C.  Reasonable Doubt

Finally, Bier contends that he was not proven guilty of the charge on which he was convicted beyond a reasonable doubt. As to this contention, the Court finds, first, that the Appellate Division's order affirming his conviction did not "result[] in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2). Indeed, in light of the evidence, it was not unreasonable for the state appellate courts to determine that Bier's guilt had been proven beyond a reasonable doubt.

Moreover, Bier has failed to show that the challenged state court determinations were contrary to, or an unreasonable application of, Supreme Court precedent, and specifically, the standard for insufficiency of evidence announced in Jackson v. Virginia, 443 U.S. 307 (1979). In assessing a claim regarding the sufficiency of trial evidence, a habeas court must view all "evidence in the light most favorable to the prosecution," and the applicant is entitled to habeas relief only if "'no rational trier of fact could have found proof of guilt beyond a reasonable doubt'" based on the evidence adduced at trial. Flowers v. Fisher, 296 Fed. Appx. 208, 210 (2d Cir. 2008) (citing Jackson, 443 U.S. at 324, 326). Even when "'faced with a record of historical facts that supports conflicting inferences [a court] must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994) (quoting Jackson, 443 U.S. at 326). Given that a reviewing court may not substitute its

9

judgment for that of a rational jury, a petitioner "bears a very heavy burden" in challenging the sufficiency of evidence upon which he was convicted. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997) (internal quotation marks and citation omitted). Surely, Bier has not come close to meeting this burden. There being no evidence of Bier's actual innocence in the record, and in light of the compelling testimony given by both Marino and Knight, the Court finds, as with the other grounds, that no writ can issue on the basis of this contention.

**CONCLUSION**

For the foregoing reasons, the petition for habeas corpus of Benjamin Bier is dismissed with prejudice and the writ is denied. Since Bier has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253(c)(2). Additionally, the Court certifies pursuant to 28 U.S.C. § 1915(a) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis is denied for the purpose of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Clerk is directed to enter judgment in accordance with this Memorandum and Order and to close this case.

SO ORDERED.

Dated: Brooklyn, New York
May 28, 2010

ERIC N. VITALIANO
United States District Judge